```
UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF RHODE ISLAND
- - - - - - - - - - - - - - - - - -x
In re:                              :

WAYNE R. PORTER                     :    BK No. 04-10932
         Debtor                          Chapter 13
- - - - - - - - - - - - - - - - - -x
In re:                              :

GREGG GINGERICH                     :    BK No. 04-11256
         Debtor                          Chapter 13
- - - - - - - - - - - - - - - - - -x
```

## DECISION AND ORDER

APPEARANCES:

    Peter G. Berman, Esq.
    Attorney for Debtors
    RASKIN & BERMAN
    116 East Manning Street
    Providence, Rhode Island 02906

    John Boyajian, Esq.
    Chapter 13 Trustee
    BOYAJIAN, HARRINGTON & RICHARDSON
    182 Waterman Street
    Providence, Rhode Island 02906

    Andrew Harmon, Esq.
    Michelle Davenport, Esq.
    Attorneys for New Century Home Equity Loan
    HARMON LAW OFFICES
    P.O. Box 610389
    Newton Highlands, Massachusetts 02461-0389

    Catherine Eastwood, Esq.
    Attorney for Federal National Mortgage Association
    PARTRIDGE, SNOW & HAHN
    180 South Main Street
    Providence, Rhode Island 02903

BEFORE ARTHUR N. VOTOLATO, United States Bankruptcy Judge

BK No. 04-10932; BK No. 04-11256

Both of these captioned cases raise similar issues regarding confirmation of the Debtors' proposed Chapter 13 plans, and they have been consolidated for purposes of this decision. Specifically, neither plan proposes regular payments because neither Debtor has regular disposable income from which to fund a plan. Instead, both Debtors have sold their homes, paid off the mortgages, and propose to pass along a relatively small, one-time, arbitrary amount of the sale proceeds to unsecured creditors, while retaining substantial equity for themselves. The Trustee objects to confirmation on the grounds that: (1) the Debtors are not making a good faith effort to pay creditors; and (2) that *all* of the unencumbered proceeds from the sale of the Debtors' homes constitute net disposable income which must be committed to the plan. The Debtors contend that the cash from the sale of their respective residences is traceable directly to their homestead exemptions, that the sale proceeds retain the exempt status of the real estate, and that their proposals to pay *any* dividend exceed what unsecured creditors would receive in Chapter 7. At the hearing no evidence was offered, and only arguments of counsel were presented.

For the reasons discussed below, this Court concludes that the voluntary sale of the Debtors' homestead in each case converted the unencumbered sale proceeds into disposable income, for purposes of

1

BK No. 04-10932; BK No. 04-11256

11 U.S.C. § 1325(b). Because no evidence was offered as to the expense reasonably necessary for the maintenance and support of the Debtors and their dependents, confirmation needs to be either denied, or postponed pending an evidentiary hearing on the needs of the Debtors. See § 1325(b)(1)(B). In light of the Debtors' failure to satisfy or even address the threshold disposable income test under 11 U.S.C. § 1325(b), the good faith issues raised by the Trustee need not be decided today.

## FACTS

The facts in these two cases, which present the identical legal issue, are as follows: In *Gingerich*, the Debtor reports net monthly salary of $2,567, substantially less than his pre-petition take home pay. His present reduced cash flow is the result of a period of unemployment and his accepting a position in a lower paying job in retail sales. In his Schedules I and J Gingerich stated monthly expenses of $4,373, of which almost half ($1,878) was required to pay his home mortgage and real estate taxes. Early on in his case, the Debtor filed a notice of intended sale of his home, the property was sold for $375,000, and the mortgage of $224,000 was paid in full. In his proposed plan the Debtor claims the bulk of the sale proceeds, based upon a claimed homestead exemption, i.e., Gingerich proposes to pay $7,000 to unsecured creditors whose claims total

2

BK No. 04-10932; BK No. 04-11256

$39,785, for a dividend of about 18%. Under a liquidation scenario there would be $1,600 available for unsecured creditors.

Mr. Porter, with pre-petition income in excess of $50,000 per year in banking now has a job in retail sales, and like Mr. Gingerich, also earns substantially less than his pre-petition income. He reports net monthly income of $1,806 and expenses of $4,239, of which $2,300 was needed to pay his home mortgage. On September 8, 2004, Porter's notice of sale was approved, his home was sold for $365,000, and the first mortgage holder was paid approximately $280,000, leaving Porter with $82,000 in allegedly exempt funds. Porter's plan provides for a one-time payment of $3,000 to unsecured creditors whose claims total $32,759, for a dividend of approximately 9%. A second significant flaw in Porter's present plan is that under his own liquidation analysis $8,485 is available for creditors - more than double what he is proposing to pay under his Chapter 13 Plan.[1]

### DISCUSSION

The common question in these two cases is: When a debtor sells exempt property to fund a Chapter 13 plan, does the voluntary sale of the exempt property transform the excess proceeds into disposable

---

[1] The Trustee has not raised this issue, but we will certainly deal with it as part of this discussion.

3

BK No. 04-10932; BK No. 04-11256

income, for purposes of 11 U.S.C. § 1325(b), or do said proceeds retain the exempt character of the real estate?  For the reasons discussed below, this Court concludes that said funds are not exempt and that they constitute disposable income.

"To qualify for confirmation, the Chapter 13 plan must provide 'that all of the debtor's disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payment under the plan.'" *In re Watson*, 403 F.3d 1, 7 (1st Cir. 2005), *quoting* 11 U.S.C. § 1325(b)(1)(B).  Disposable income is defined under the Code as "income which is received by the debtor and which is not reasonably necessary to be expended--  (A) for the maintenance or support of the debtor or a dependent of the debtor...."  11 U.S.C. § 1325(b)(2)(A). The Debtor has the burden of proving that an expense is reasonably necessary.  *Watson*, 403 F.3d at 8.

In both of these cases the Debtors have voluntarily elected to sell their exempt homesteads, to convert the asset into cash, and to dedicate an arbitrary portion of said proceeds as the sole source of funding their plans.  By filing under Chapter 13, the Debtors received the benefit, inter alia, of time and protection from creditors, enabling them to maximize the recovery for their respective properties. Having capitalized on said benefit, they now

4

BK No. 04-10932; BK No. 04-11256

must address the obligations that accompany a Chapter 13 filing. Their Schedules I and J show that neither of these Debtors have regular income from which to fund a plan, and this at once puts into question their very eligibility for Chapter 13 relief under 11 U.S.C. § 109(e). "[I]t is unlikely that a debtor would be permitted to include exempt income as regular income to realize access to a Chapter 13 case and then assert the exemption as a bar to capturing that income for creditors at confirmation." Keith M. Lundin, *Chapter 13 Bankruptcy* §8.1 at 8-4 (3d Ed. 2000). Debtors may need to:

> include exempt income to qualify as "an individual with regular income." But exempt income not reasonably needed for support then becomes "disposable income" that *must* be paid to creditors. Despite this additional implication, courts since 1984 have continued to hold that revenues received from exempt sources during the life of a Chapter 13 plan are "income," the disposable portion of which must be paid to unsecured creditors if the plan is to be confirmed ....

*Stuart v. Koch (In re Koch)*, 109 F.3d 1285, 1289 (8th Cir. 1997).

The Court in *Koch* cites several examples where such exempt property as tax refunds, social security benefits, workers' compensation benefits, pension benefits, and personal injury recoveries were considered and treated as disposable income. *Id.* Another frequently cited case on this issue is *In re Schnabel*, 153 B.R. 809 (Bankr. N.D. Ill. 1993), where confirmation was denied because of the debtor's failure to include social security and

5

BK No. 04-10932; BK No. 04-11256

pension income which the court found to be disposable income. The court explained:

> The Debtor's reliance on the exemption statutes is misplaced in the context of Chapter 13 plan confirmation proceedings. The Court does not dispute the Debtor's contention that exemptions apply in both Chapter 7 and Chapter 13. See 11 U.S.C. § 103(a). However, their significance is greatly diminished in a Chapter 13, where the fresh start is protected by the debtor's retention of non-disposable income rather than by exempt assets. ... Legislative history indicates that in a liquidation exemptions are meant to "protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge." H.R.Rep. No. 95-595, *supra*, at 126, *reprinted in,* 1978 U.S.C.C.A.N. at 6087. ... A Chapter 13 debtor, on the other hand, may keep all its assets, exempt or not, in return for repayment of creditors out of future income. Where the Debtor is assured of an income sufficient to meet his basic needs, his fresh start is not imperiled by requiring him to make payments to creditors out of his social security and pension benefits, especially where, as here, it is those benefits that he proposes to use to fund his plan.
> Allowing the Debtor to use his exempt income to attain Chapter 13's broad discharge, without the corollary requirement to use it to pay creditors as much as he is able, would contravene the express purpose of the statute-- namely, that the debtor make payments under a plan.

*Schnabel*, 153 B.R. at 817 (citations omitted). *See also In re Lush*, 213 B.R. 152 (Bankr. C.D. Ill. 1997); *In re Gebo*, 290 B.R. 168, 170 (Bankr. M.D. Fla. 2002) ("In sum, this Debtor has a choice and can elect to seek relief under chapter 7 and keep the finds allowed as exempt, or seek relief under chapter 13 and use its liberal and remedial provisions to save the family home from loss through

BK No. 04-10932; BK No. 04-11256

foreclosure sale. But if that is the Debtor's choice, it is unfair and grossly inequitable and smacks of bad faith to immunize exempt funds by excluding them from the 'disposable income test.'").

The attempt by these Debtors to distance themselves from the scope of the foregoing cases, i.e., that a homestead exemption is different from an exempt stream of payments that have been determined to be disposable income, is not persuasive. While an unliquidated homestead is generally considered to be beyond the reach of creditors, here, by converting their homesteads into cash the Debtors have rendered the proceeds indistinguishable from any other disposable income. As Judge Lundin noted: "Is there any difference between the income realized from selling a debtor's home and the income received from the sale of inventory by a Chapter 13 debtor engaged in business?" Keith M. Lundin, *Chapter 13 Bankruptcy* §9.11 at 9-28 (3d Ed. 2000). Notwithstanding the Debtors' arguments to the contrary, cash is cash whether it originates from a lump sum personal injury settlement, business inventory sales, or the liquidation of the debtors' homestead, and the argument that because the fund was once rooted in exempt real estate it continues to retain that character in perpetuity is illogical, and requires a leap that this Court is not willing to take.

7

BK No. 04-10932; BK No. 04-11256

Put simply, the sole means of funding the Debtors' plans are sale proceeds which have been determined to be disposable income, and it is not for the Debtors to dictate how much goes to creditors, without first establishing what they need to retain as reasonably necessary to support themselves and their dependents. Because there is nothing in the record as to that issue, an evidentiary hearing is necessary for the Debtors to establish what portion of the sale proceeds constitute disposable income under Section 1325(b)(1)(B).[2] The Debtors shall file amended Schedules I and J on or before May 10, 2005, and the matter is set for hearing on May 11, 2005, at 9:30 a.m., on the maintenance and support issue. A joint pre-trial order shall be filed on or before May 10, 2005.

Entered as an order of this Court.

Dated at Providence, Rhode Island, this  6th  day of May, 2005.

_____
Arthur N. Votolato
U.S. Bankruptcy Judge

Entered on docket: 5/6/05

---

[2] In addition to addressing the main issue discussed above, Mr. Porter will have to amend his plan to pay unsecured creditors at least what they would receive in a Chapter 7 liquidation, to comply with 11 U.S.C. § 1325(a)(4).

8